# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1611

WILLIE HARRIS,

*Petitioner-Appellant,*

v.

ZETTIE COTTON, Superintendent,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 02 C 323—**Allen Sharp**, *Judge.*

_____

ARGUED FEBRUARY 9, 2004—DECIDED APRIL 2, 2004

_____

Before BAUER, MANION, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-Appellant brought this action for a writ of *habeas corpus* claiming a *Brady*[1] violation and ineffective assistance of counsel under *Strickland.*[2] We begin and end on the latter. The district court denied the writ.

_____

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

## I.  Background

On February 4, 1993, Willie Harris and his wife started to the home of Essie Johnson, a friend, to help her move from the house which she shared with one Leslie Jones. When Harris could not find Johnson's house, he stopped at a pay phone near a bar to get directions. While Harris was on the phone, Leslie Jones came out of the bar, yelled at Harris in a hostile manner, and intentionally bumped into him. Harris and his wife walked away from this encounter and headed to Johnson's house. Unfortunately, Jones ended up at the house too.

At Johnson's house Jones continued to make various hostile remarks and began to harass Harris. Harris and his wife tried to leave but their car would not start. When Harris attempted to jump-start his car, Jones snatched the cables from his hand and refused to give them back. The altercation ended when Harris shot Jones in the head. Jones died minutes later with the jumper cables in his hand and a fully loaded handgun in his pocket. (The neighborhood seems to be exciting, although safety is iffy, at best.)

The county coroner's office performed an autopsy and blood, bile, and urine were submitted for a toxicology report. The report showed that Jones was under the influence of alcohol and cocaine when he died. The toxicology report was not sent to the prosecution nor disclosed to the Defendant. Although he knew that such a report existed, the Defendant's attorney said that he failed to obtain the toxicology report and that the failure was "an oversight."

During the trial, Harris attempted to question the pathologist who performed the autopsy about Jones's alcohol use. The trial court refused to allow this line of questioning, apparently because there was no evidence that the victim was, or appeared to be, drinking or intoxicated.

A jury convicted Harris of murder and he was sentenced to 40 years in prison. After exhausting his state remedies, Harris filed the instant petition for a writ of *habeas corpus*. The district court denied the petition.

## II. Discussion

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs our review of Harris's petition for a writ of *habeas corpus*. Under AEDPA, a writ is not available on any claim that was adjudicated on the merits in state court unless such adjudication resulted in a decision that is contrary to, or involves, an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application of clearly established federal law" when that court "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). We review the mixed fact and law question of "contrary to" or "unreasonable application" de novo. *Henry*, 223 F.3d at 480. We do, however, give deference to a reasonable state court decision. *Anderson v. Cowan*, 227 F.3d 893, 896-97 (7th Cir. 2000).

### B. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel as discussed by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A successful claim of ineffective assistance of counsel under *Strickland* requires the defendant to make a

two-part showing. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, the defendant must show that the deficient performance of counsel served to prejudice his defense. *Id.* at 687. Prejudice will be found when there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

### 1. *Ineffective Assistance of Trial-Counsel-Reasonable Performance*

Turning to the first prong of the *Strickland* test, whether counsel's performance fell below an objective standard of reasonableness, we start with a presumption that choices made by an attorney as to what evidence should be presented, what issues deserve the most focus, and so on, are strongly presumed to be tactical decisions and therefore, objectively reasonable. *Id.* at 689. In this case however, Petitioner's attorney admitted that his failure to obtain the toxicology report was an "oversight" and that he had "no explanation that could justify [his] not having [the toxicology report]." (Supp. App. at 63.) While, an inadvertent omission does not automatically equal constitutionally deficient performance, *Yarborough v. Gentry*, 124 S. Ct. 1, 6 (2003), the Supreme Court has repeatedly held that a failure to conduct a reasonable investigation may satisfy the performance prong of *Strickland*, *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003); *Williams*, 529 U.S. at 371.

Harris was charged with murder and his defense was self-defense. The behavior of the victim was therefore extremely important to Harris's case.

From the perspective of a defense attorney, an affirmative defense of self-defense against a drunk and cocaine-high

victim stands a better chance than the same defense against a stone-cold-sober victim. Common sense tells us that an individual under the influence of cocaine and alcohol may look and act in a strange manner—an observation supported by expert testimony in the post-conviction proceedings. Harris's attorney was aware that Jones had been drinking and was further aware that a toxicology report had been requested. He also knew how to request the report, as he had done so on other occasions. Finally, he knew that the victim's behavior prior to the shooting was "critical, absolutely critical." (Supp. App. at 54.) Counsel's subjective belief of the importance of evidence related to Jones's behavior is mirrored by the state court's assertion that "[u]ndoubtedly, Jones' behavior was critical to Harris' defense." (App. at 12.) Therefore, it is clear that Harris's attorney *should* have the toxicology report for use at trial. Because his failure to obtain and present the report was a mistake, and not a calculated strategic decision, we find that his performance fell below the objective standard of reasonableness required by *Strickland*.

### 2.   *Ineffective Assistance of Trial-Counsel-Prejudice*

Having established the first prong of the *Strickland* test, Harris must now show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Under relevant state law, a "person is justified in using reasonable force against another person to protect [himself] from what [he] reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(a). To sustain a claim of self-defense, the jury must find that a reasonable person in the shoes of the defendant would have felt fear or apprehension of death or great bodily harm. *Shepard v. State*, 451 N.E.2d 1118 (Ind. Ct. App. 1983). Under such a standard, it is clear that the victim's behavior is extremely relevant.

The state court decision points out that evidence of Jones's behavior prior to the shooting was admitted into evidence; "[h]owever, with the exception of Harris' claim that Jones was pulling a gun on him, there was no dispute as to the behavior of Jones." (App. at 20.) That court further stated, "[t]he presence or absence of alcohol and drugs in Jones' system does not change the testimony concerning Jones' behavior that evening." (App. at 20). While it is true that the evidence does nothing to change the substance of the testimony regarding Jones's behavior, it creates, in the words of the dissenting state court judge, a "'reasonable probability' that [the jurors'] collective perception regarding Harris' conduct would have changed." (App. at 15.) The state court majority said it slightly differently when it said, "[h]ad the jurors known of Jones' blood alcohol level and his use of cocaine, they may have credited Harris' claim of Jones' hostile and erratic behavior." (App. at 12.) Finally, as Harris states in his brief to this court, "[t]he fact that Jones had been drinking and using cocaine is evidence that his behavior at the time was altered and erratic. That evidence directly corroborates Harris's contentions about how he perceived Jones's behavior at the time." (Br. of Petitioner-Appellant at 31.) Clearly, the state court and the Petitioner were on the same page as to what effect the failure to obtain and present the toxicology report might have had on the jury's credibility findings. Despite this agreement, they do not agree as to whether such an effect is sufficient to create prejudice under *Strickland*.

We recognize, as did the state court, that there is little or no evidence which goes to show that Harris *knew* that Jones was under the influence of cocaine and alcohol. We do not however find such a distinction dispositive. In fact, the lack of evidence admitted regarding Jones's state of intoxication leads to the opposite conclusion than the one arrived at by the state court. When defense counsel tried to question the

coroner[3] as to whether Jones's body smelled of alcohol, his line of questioning was disallowed. Therefore, the jury was left with the impression that the decedent *was not intoxicated* when, in fact, he was quite inebriated. If the jury believed that Jones was sober, there is a reasonable probability that they would not have believed Harris's version of events as it related to Jones's behavior.

We find that there is a reasonable probability that the outcome of the proceedings would have been different if the toxicology results were presented. Harris's Sixth Amendment right to effective assistance of counsel was violated.

The Indiana state court identified the correct legal standard—that of *Strickland*—but unreasonably applied it. Despite recognizing the critical importance of the victim's behavior, the state court did not find prejudice. Our analysis of their opinions leads us to believe that the court failed to apply the "reasonable probability" standard despite citing to that standard.

### III.  Conclusion

We find that Harris's right to effective assistance of trial counsel was violated. We further find that the state court's treatment of Harris's *Strickland* claim constitutes an unreasonable application of clearly established federal law. We REVERSE the denial of the writ by the district court and REMAND with directions to grant the writ unless the State elects to retry the Defendant within 120 days.

---

[3] The coroner performed the autopsy itself. That office was not responsible for testing the blood, bile, and urine for intoxicants and thereafter, generating a report as to the findings of such tests.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*