In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-4066

FRAZIER CROCKETT,

*Petitioner-Appellant,*

*v.*

DONALD HULICK,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4105—**William T. Hart**, *Judge.*

_____

ARGUED MAY 6, 2008—DECIDED SEPTEMBER 8, 2008

_____


Before EASTERBROOK, *Chief Judge,* and WOOD and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Frazier Crockett is currently serving sentences of natural life in prison without parole and 30 years' imprisonment for his 1996 convictions for two counts of first degree murder and two counts of robbery. After unsuccessful appeals to the Illinois Appellate Court and Illinois Supreme Court, Crockett filed a petition for a writ of habeas corpus in the Northern District of Illinois. The court denied his petition, and he

filed a notice of appeal. The district court granted Crockett's motion for a certificate of appealability on one issue: Were Crockett's constitutional rights denied when he was not timely informed that the jury had sent a question to the trial judge during deliberations?

## I. Background

Crockett's convictions arise from the robbery and fatal shooting of two men, Javier Guzman and Jorge Torres, in an alley in Chicago's Rogers Park neighborhood. Upon Crockett's arrest, he gave a statement to police describing the crimes: He and James Swansey, with a gun drawn, followed two men into an alley and demanded that the men lie down. Swansey asked the men if they had any money on them, but the men claimed they did not. Crockett pointed the gun at the men while Swansey searched them. Crockett then also searched the men and found money in one man's pocket. He suggested to Swansey that they "pop" the men for lying, and Swansey shot them both in the head.

At trial, it was undisputed that Swansey was the trigger-man. Three of Crockett's acquaintances testified for the State that Crockett told them that he and Swansey robbed the men and Swansey shot them. Crockett's theory of defense was that he was present and watched the commission of the crimes but did not participate. Crockett testified at trial that on the night of the murders he had been walking around with Swansey and Kenneth Henry. (Henry was one of the State's witnesses at trial and the person who initially provided the tip to police that Crockett had been involved in the crimes.) Crockett

claimed that he stopped to talk to a friend on the street when Swansey and Henry followed two men into the alley. He was attempting to catch up to Swansey and Henry and was standing in the entrance to the alley sixty feet away when Henry and Swansey robbed the men. He began to run away after Swansey fired the first shot. He later accepted "hush money" from Henry to keep quiet about what he had witnessed. Crockett explained that his prior statement to police implicating himself (which did not mention Henry) was a lie to protect Henry, whom he feared, because Henry was a drug dealer for whom Crockett sold drugs.

During deliberations, the jury sent three notes to the judge. The first two notes asked for a dictionary and for the reports of police detectives. The judge directed the sheriff to contact defense counsel by telephone about the notes, and the court conferred with counsel about the appropriate response. After the parties conferred, the judge declined the jury's requests and directed the jury to continue deliberating. Later, the jury sent a third note to the judge asking for a definition of the word "abet."[1] The judge again directed the sheriff to contact defense counsel, but for unknown reasons the sheriff either did not contact defense counsel or was unable to reach them. The

---

[1] The jury's instruction on accountability included the word "abet": "A person is legally responsible for the conduct of another person when either before or during the commission of an offense and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or the commission of the offense."

judge did not respond to the jury, and the jury eventually reached a guilty verdict. The judge did not inform defense counsel before or after the verdict that the jury had asked a third question.

After the trial, defense counsel discovered the third note from the jury in the court's case file. In a post-verdict motion for acquittal or a new trial, defense counsel included affidavits from three jurors. All three jurors stated that they had requested a dictionary to look up the word "abet" but received a response from the trial judge to keep deliberating. All three jurors stated that they later sent a note specifically asking for the definition of "abet" but received no response. One juror explained:

> Some of the jurors sent out a note asking for the definition of the word abet. We waited for a response but never received one. Eventually some of the jurors came up with their own definition because we had no legal definition. We decided that Frazier Crockett was guilty of aiding and abetting Kenneth Henry and James Swansey because, while he observed the robbery and murder from 60 feet away, Frazier Crockett did nothing to stop them, he kept the $40.00 hush money after the fact, and he never went to the police. The jury did not determine that Frazier Crockett encouraged, solicited, promoted or facilitated the commission of the armed robberies and murders.

In less detail, the other two jurors provided similar accounts of the deliberations, stating that they concluded

Crockett was guilty because he observed the crime and never went to the police. The jurors made conflicting estimates as to how much time had passed between sending the note and reaching the verdict: one estimated fifteen minutes, another estimated between thirty minutes and one hour, and a third estimated one hour.

The trial court denied Crockett's motion for a new trial. On appeal, the Illinois Appellate Court found that the definition of the word "abet" was central to Crockett's defense because if the jury "mistakenly believed that 'abet' could encompass less culpable behavior than the other terms [in the jury instruction], such as being present at the commission of a crime and doing nothing about it, the defendant's defense was precluded." *People v. Crockett*, 731 N.E.2d 823, 835 (Ill. App. Ct. 2000). The court noted that the jury was entitled to clarification, but Crockett shouldered the burden of demonstrating factors such as how much time elapsed before the verdict was reached and what attempts were made to reach counsel; if the jury reached a verdict before the court could reasonably answer, then there was no reversible error. *Id.* at 835-36. The court concluded that Crockett failed to construct a record that demonstrated that the trial court unreasonably delayed in responding to the jury prior to the verdict. *Id.* at 836. The court found, however, that the trial court erred in not informing Crockett after the verdict was reached that the jury had asked a third question, but it determined that the error was harmless because Crockett had discovered the note within a 30-day period (in time to move for acquittal or a new trial), the argument on the motion did not occur for several more months, and

he was able to obtain affidavits from three jurors. *Id.* The Illinois Supreme Court denied Crockett's petition for leave to appeal. *People v. Crockett*, 738 N.E.2d 930 (Ill. 2000).[2]

Crockett filed a habeas petition under 28 U.S.C. § 2254 with the district court. The court noted that it does not violate a defendant's constitutional right to a fair trial when a deliberating jury asks a question but reaches a verdict before the court can reasonably respond. Crockett contended that the situation was different where the trial judge entirely failed to inform the defense counsel before the verdict that the note even existed; the court agreed the distinction could be important but found it to be irrelevant in light of the Illinois Appellate Court's finding that the trial judge did attempt to contact the defense counsel. While noting that Crockett had never appealed the state court's decision to place the burden upon him, the district court inquired as to whether the Illinois Appellate Court did so in error. The court reasoned that if there were a constitutional error, then the Illinois Appellate Court should have applied the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 24 (1967), and placed the burden on the State. The district court con-

---

[2] Crockett also unsuccessfully challenged an evidentiary ruling and the exclusion of prospective African American jurors under *Batson v. Kentucky* in his appeals to the Illinois Appellate Court and Illinois Supreme Court. Those issues were considered and rejected again by the district court in Crockett's habeas petition, and the district court declined to grant Crockett a certificate of appealability on those two issues.

cluded, however, that it was appropriate for Crockett to bear the burden until he established that a constitutional violation had occurred, which he failed to do. Finally, the court concluded that Crockett could not sustain his burden on habeas review with respect to the Illinois Appellate Court's determination that it was harmless error for the trial court to fail to tell defense counsel about the note after the jury's verdict.

## II. Analysis

We review the district court's findings of fact for clear error and its legal conclusions de novo. *Rizzo v. Smith*, 528 F.3d 501, 505 (7th Cir. 2008). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to this case, *Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007), prohibits a federal court from issuing a writ of habeas corpus on any claim that was adjudicated on the merits in the state court, unless it: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary" to clearly established federal law if the state court "reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts." *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008). A state court's decision is an

"unreasonable application" of federal law if it identified the proper legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the petitioner's case. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "To be unreasonable, the decision must not only be incorrect, but so incorrect that it lies outside of the range of reasonable conclusions." *Jones v. Wallace*, 525 F.3d 500, 503 (7th Cir. 2008). In analyzing the reasonableness of the state court's decision on a factual matter, we assume that the state court's factual determinations are correct unless the defendant rebuts them with clear and convincing evidence. *Mack v. McCann*, 530 F.3d 523, 533 (7th Cir. 2008); 28 U.S.C. § 2254(e)(1).

Crockett's appeal implicates both the legal and factual components of AEDPA. He argues that: (1) the Illinois Appellate Court erred in concluding that the trial judge did not commit constitutional error when it failed to notify defense counsel about the question and respond to the jury prior to the verdict; (2) the Illinois Appellate Court's determination that the trial judge did not unreasonably delay in answering the jury's question prior to the verdict was unreasonable in light of the evidence; and (3) the Illinois Appellate Court found that the trial judge erred in not informing defense counsel of the note after the verdict but applied the wrong burden analysis, contrary to Supreme Court precedent.[3]

---

[3] Crockett also requests that we grant his motion to supplement the record on appeal with eleven items that were not included in the record at the district court. Federal Rule of

(continued...)

### A. The Trial Court's Actions Prior to the Verdict

Crockett's legal challenge focuses upon his right to a fair trial, his right to counsel, and his right to be present during all stages of trial. He cites several Supreme Court cases: *Maine v. Moulton*, 474 U.S. 159, 176 (1985) (holding that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent"); *United States v. Wade*, 388 U.S. 218, 236-37 (1967) (holding that a defendant was entitled to counsel at a post-indictment lineup); *United States v. Gagnon*, 470 U.S. 522, 529 (1985) (holding that the "failure by a criminal defendant to invoke his right to be present . . . at a conference which he knows is taking place between the judge and a juror in chambers constitutes a valid waiver of that right"); and *Rogers v. United States*, 422 U.S. 35, 39-40 (1975) (holding that it was error for the trial judge to answer a jury's question without giving defendant's counsel an opportunity to be heard before the trial judge responded).

---

[3] (...continued)

Appellate Procedure 10(e) permits us to allow correction or modification of the record on appeal where items were omitted by error or accident. Although we usually decline to supplement the record on appeal, two of the items offered by Crockett are helpful for context—the jurors' affidavits and the accountability instruction. Therefore, we GRANT his motion to supplement the record with those two items and DENY the motion as to the other nine items. *See Ruvalcaba v. Chandler*, 416 F.3d 555, 563 n.2 (7th Cir. 2005) (supplementing the record on appeal for a habeas petition).

The Illinois Appellate Court first noted that it would have been improper for the trial judge to respond to the jury before contacting counsel, and the trial judge appropriately did not do so. This is consistent with the principle set forth by the Supreme Court in *Rogers*. The court then held that it is not error for a trial judge to fail to respond to a question by the jury if the jury reaches a decision before a response can reasonably be provided. Crockett does not cite a case in which the Supreme Court held the opposite on materially indistinguishable facts to show that this decision was "contrary" to Supreme Court precedent; nor does he show that the decision involved an "unreasonable application" through the appellate court's unreasonable refusal to extend a rule to a context where it should have applied. *Virsnieks*, 521 F.3d at 713. In fact, he does not show that the decision was incorrect, let alone "so incorrect that it lies outside of the range of reasonable conclusions." *Jones*, 525 F.3d at 503. Therefore, Crockett has not satisfied his burden under AEDPA. *See Rizzo*, 528 F.3d at 505 (rejecting habeas petition and noting that Rizzo claimed constitutional violations "but stop[ped] short of stating which Supreme Court case provides clearly established precedent for his position"); *Lieberman v. Thomas*, 505 F.3d 665, 672 (7th Cir. 2007) ("Nowhere in the petition does Lieberman demonstrate how the state appellate court's opinion conflicts with, or unreasonably applied, relevant Supreme Court precedent . . . .").

Crockett's factual challenge focuses upon the Illinois Appellate Court's determination that Crockett failed to show that the trial court unreasonably delayed in inform-

ing defense counsel of the note prior to the verdict. Crockett claims that the record shows the trial court did unreasonably delay, and the Illinois Appellate Court's conclusion to the contrary was unreasonable in light of the evidence. Applying the standard from *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that an error must have a substantial and injurious effect on the verdict to entitle a petitioner to habeas relief), he claims that the error had a substantial and injurious effect on the jury's verdict because the juror's affidavits showed that they accepted his trial testimony, which would very likely have resulted in an acquittal if they had received clarification on the meaning of "abet." The district court disagreed with Crockett, finding the Illinois Appellate Court's decision that the trial court did not unreasonably delay was a reasonable determination based on the facts in the record.

Factually, we agree with Crockett that the record shows that the trial judge had the telephone number for the defense counsel, the sheriff successfully contacted defense counsel by telephone for the previous jury notes, and defense counsel asserted that they remained available by telephone during the time period of the third question. Crockett argues that this demonstrates "there were means and opportunity to tell defense counsel about the third note . . . . However, they were not told." The Illinois Appellate Court's findings of fact did not contradict Crockett's version of the facts—the court never claimed that defense counsel were unavailable or had been told about the note. However, the court accepted the trial judge's statement that an attempt to contact counsel was

made because the trial judge directed the sheriff to call counsel, and Crockett does not provide us with clear and convincing evidence that the judge did not give the sheriff this direction. *See* 28 U.S.C. § 2254(e)(1). Armed with that conclusion, the Illinois Appellate Court then assessed whether the delay in responding to the jury was unreasonable. The affidavits of the jurors show that the trial judge received the note from the jury and did not respond for fifteen minutes to one hour. The Illinois Appellate Court cited several cases in which a judge did not respond to a jury's question: *People v. Sims*, 519 N.E.2d 921, 935 (Ill. App. Ct. 1987) (holding that it was not reversible error to fail to answer the jury's question where the trial judge was presiding over closing arguments in a co-defendant's case when the question was asked and the jury reached a result before the judge could confer with the parties); *People v. Chandler*, 110 A.D.2d 970, 971 (N.Y. App. Div. 1985) (holding that it was not reversible error for a trial court to fail to answer a jury's question for fifty minutes after which the jury returned a verdict); *People v. Hall*, 101 A.D.2d 956, 957 (N.Y. App. Div. 1984) (holding that it was reversible error for a trial court to fail to answer a jury's question on the burden of proof for two hours after which the jury returned a verdict). The court concluded that Crockett did not construct a sufficient record to show the trial judge acted unreasonably.

Crockett notes that to the extent the reasonableness inquiry was based upon a factual determination, the Illinois Appellate Court did not make a finding that the trial court acted reasonably; instead it *refused* to find that

the trial court acted *unreasonably*. While this is true, it does not help Crockett in satisfying his burden under AEDPA. The Illinois Appellate Court accepted the facts that Crockett developed on appeal. Its decision was not based upon an unreasonable determination of the facts in light of the evidence; rather, its decision was based upon the lack of evidence that would have been used as "factors . . . in determining whether reversible error was committed." *Crockett*, 731 N.E.2d at 835. Although initially couched as a factual argument, Crockett later claims that the reasonableness inquiry made by the Illinois Appellate Court was a question of law, but he does not attempt to cite any case that would show an unreasonable application of federal law as established by the Supreme Court. Therefore, his petition fails on this issue. *See Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) ("Lockhart failed to point to a relevant Supreme Court case, [and] our own search . . . also failed to locate such a case."); *cf. Burt v. Uchtman*, 422 F.3d 557, 566 (7th Cir. 2005) (finding that the Illinois Supreme Court unreasonably applied Supreme Court precedent from *Pate v. Robinson* in determining that the trial court did not err by accepting a guilty plea without ordering a renewed competency hearing).

## B. The Trial Court's Actions After the Verdict

Crockett's final argument is that the Illinois Appellate Court made a legal error by employing the wrong burden of proof analysis. That court noted that the trial judge "clearly erred" by not informing defense counsel of the

jury note as soon as practicable after the verdict but held that the error was harmless. *Crockett*, 731 N.E.2d at 836. The district court stated that this factual finding was presumed correct due to Crockett's inability to make a clear and convincing showing to the contrary.

Crockett argues that because the Illinois Appellate Court concluded that the trial court made a constitutional error, it should have applied the burden of proof from *Chapman*; this would require the State, not Crockett, to satisfy the burden of proof, and the State must prove that the error was not just harmless error but harmless beyond a reasonable doubt. 386 U.S. at 24. Crockett argues that the court's failure to apply the correct standard had a substantial and injurious effect upon him, *see Fry v. Pliler*, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007) (applying a *Brecht* standard on habeas review where the state appellate court failed to apply *Chapman*)[4] because, if the trial court had informed him of the note immediately, he

---

[4] Crockett first argues that the error was "structural error" (automatically requiring reversal) because it did not occur during the trial and hence could not be "trial error," which the *Brecht* standard addresses. We reject the notion that all errors occurring after the verdict are structural errors, *see Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006) ("Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (internal footnote and quotation omitted)), but we do not need to reach the alternate question he poses: whether we should create a modified *Brecht* standard for the error's effect on his ability to appeal.

would have had the ability to obtain affidavits from more jurors while the event was fresh in their minds. He then could have satisfied the burden placed upon him by the Illinois Appellate Court in showing that the trial judge unreasonably delayed in answering the note before the verdict.

Crockett argued to the Illinois Appellate Court that not informing counsel of the jury note after the verdict was constitutional error, citing *People v. Childs*, 636 N.E.2d 534, 538 (Ill. 1994), a case which invoked the Sixth Amendment's right to "participate in person and by counsel at all proceedings which involve his substantial rights." Although the Illinois Appellate Court determined that the trial court "clearly erred in its failure to ultimately notify the defendant of the jury's question at the earliest opportunity after the verdict" the court never explicitly stated that it found the error to be constitutional.[5] *Crockett*, 731 N.E.2d at 836. The court also did not address which party had the burden of proof. The court did cite *Childs*, a case that used the harmless beyond a reasonable

---

[5] Despite the ambiguity, Crockett assumes that the court found a constitutional error but does not argue in the alternative that the Illinois Appellate Court should have found a constitutional error but did not. *Compare United States v. Widgery*, 778 F.2d 325, 329 (7th Cir. 1985) (noting that in federal court "[a] judge's failure to show jurors' notes to counsel and allow them to comment before responding violates Fed. R. Crim. P. 43(a), not the constitution") *with Moore v. Knight*, 368 F.3d 936, 940-42 (7th Cir. 2004) (discussing constitutional violations and prejudice to a defendant where the trial judge answered a jury's question *ex parte* that went to the defendant's alibi defense).

doubt standard and, as previously mentioned, invoked the Sixth Amendment. Crockett's brief also advised the Illinois Appellate Court that constitutional errors require the State to prove that the error was harmless beyond a reasonable doubt. Nevertheless, the court's entire statement on harmless error was:

> [I]n spite of this violation of the defendant's right to be informed by the trial court, we must conclude that the error was harmless. The record is clear that the defendant in fact discovered the note before he made his motion for a new trial, which would point to the actual discovery of this note well within the thirty-day period following the verdict. The record is further clear that the motion was not argued until several months later, giving the defendant ample time and opportunity to investigate and make a record of the circumstances prevailing at the time the jury question was sent.

*Id.* It is not clear, as Crockett contends, that the court applied the burden of proof to him on this issue. And while the court did not use the term "harmless beyond a reasonable doubt," it is possible that the court was applying the correct standard, albeit ambiguously.

Even assuming that the Illinois Appellate Court held the error was constitutional and failed to apply the harmless beyond a reasonable doubt standard to the State, Crockett encounters another problem—he failed to present this claim to the Illinois Supreme Court. The district court discussed Crockett's procedural default of a claim that the Illinois Appellate Court had inappropriately

placed the burden on him in proving that prior to the verdict the trial court unreasonably delayed in answering the jury's question. The district court did not discuss whether Crockett procedurally defaulted his after-the-verdict *Chapman* claim because Crockett did not raise that claim in the district court either. A procedural default occurs where a habeas petitioner "has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Malone v. Wells*, No. 06-3235, 2008 WL 3823868, at *6 (7th Cir. Aug. 18, 2008). The exhaustion of state remedies require-ment "serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal right." *Lieberman*, 505 F.3d at 669. The petitioner must fairly present the federal nature of his claim to the state court by sub-mitting "both the operative facts and the controlling legal principles" of the federal claim through one full round of review. *Malone*, 2008 WL 3823868 at *6 (quotation omitted). This includes asserting the claim to the Illinois Supreme Court for discretionary review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Crockett's petition for leave to appeal to the Illinois Supreme Court, the extent of his claim was that "[t]he court was required to convene the parties and then provide the jury with a clarifying instruction. Failure to do so deprived the defendant of a fair jury adjudication, by a properly instructed jury" (internal citation omitted). He never alerted the Illinois Supreme Court that the failure to inform him of the jury note after the trial was

a constitutional error to which the appellate court applied the wrong burden of proof. A "hypertechnical congruence" of the claims is not required between federal and state court for a claim to be fairly presented, *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006); instead "we assess whether the petitioner alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis." *Lieberman*, 505 F.3d at 670. Although Crockett was aware of a heightened burden of proof for constitutional violations because he addressed it in his brief to the Illinois Appellate Court, he did not inform the Illinois Supreme Court of his basis for the claim now presented on habeas review in a manner sufficient for the Illinois Supreme Court to address it in the first instance. Therefore, he has procedurally defaulted the claim. *See Boerckel*, 526 U.S. at 848 ("Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court. . . . Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005) ("It appears that Robert did raise this issue in his initial brief before the Wisconsin Court of Appeals. Robert, however, never presented the [issue] to the Wisconsin Supreme Court in his petition for that court to review the decision of the Wisconsin Court of Appeals. While the Wisconsin Supreme Court denied his petition for

review, Robert was still required to present the issue to it.").

When a petitioner presents a defaulted claim for federal habeas review, we may consider it only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008). Crockett fails to argue either point, and so we cannot consider his claim. Habeas is an "extraordinary form of relief" to which Crockett has not demonstrated that he is entitled. *Lieberman*, 505 F.3d at 671.

### III. Conclusion

We AFFIRM the district court's denial of Crockett's petition for habeas corpus.