NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2009
Decided July 28, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 07-3820

| | |
|---|---|
| MICHAEL D. BURNS,<br>       *Petitioner-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
|    *v.* | No. 04-C-582 |
| BRADLEY HOMPE,<br>       *Respondent-Appellee*. | Aaron E. Goodstein,<br>*Magistrate Judge*. |

## O R D E R

Michael Burns, a Wisconsin state inmate, was convicted after a bench trial of one count of first-degree sexual assault of a child and sentenced to fifteen years in prison and ten years' extended supervision. After exhausting his state remedies, Burns filed a petition for a writ of *habeas corpus*. See 28 U.S.C. § 2254. The district court denied his petition, but this court certified two issues for appeal: whether the state produced sufficient evidence that Michael Burns was the assailant in light of his son's confession and whether counsel rendered ineffective assistance. Bearing in mind the standards that apply to *habeas corpus* cases, we conclude that the evidence was sufficient and that counsel's performance was adequate. We therefore affirm

the district court's judgment.

## I

Sally, an eleven-year-old girl, was sexually assaulted in the early morning hours of December 17, 2000. ("Sally" is a pseudonym we have chosen to preserve the victim's privacy for purposes of this order.) That evening, Sally had been invited to sleep over at Michael Burns's house to keep his fiancée's six-year-old daughter company. Sally's family and the Burns family were long-time friends, and Sally regularly visited the house.

While watching a movie, the girls fell asleep on the couch. Around 12:30 a.m., according to Sally's testimony, while she was sleeping, she felt someone kiss her first on the lips and then on the forehead. This person had facial hair, and smelled like beer and cigarettes. Sally said that she never opened her eyes because she was scared. The same person placed his hand inside her underwear and inserted his finger into her vagina. Sally kept her eyes shut, but she rolled over to face the back of the couch and her assailant walked away. She heard him walk to the kitchen, open the refrigerator, and open a can. Within minutes, the other girl woke up crying, and someone walked in from the kitchen to comfort her. Sally opened one eye and saw that it was Burns.

Two days later, Sally told her older sister that Burns assaulted her. The two girls told their mother, who notified the police. Sally later made a detailed report to police investigators. Burns was arrested and charged with the assault on December 19. When first questioned by police about who was in his home on Saturday night, Burns said that only he, his fiancée, and his fifteen-year-old son, Bryan, were there. It was only after prompting by police that he admitted that the two girls were there, too.

At the bench trial, Sally recounted her story, accusing Burns of assaulting her. During his father's defense, Bryan testified that *he* was the one who assaulted Sally and had inserted his finger into her vagina. According to Bryan, after assaulting Sally, he went back upstairs to his bedroom. Only then, he maintained, did his father emerge from his first-floor bedroom and go to the kitchen. Bryan denied smoking or drinking beer the night of the assault. Bryan did not publicly confess until the trial, but he explained that he had confessed to his father, Michael, after Michael told Bryan that angels visited Michael while he was in jail, and these angels told Michael that Bryan had assaulted Sally.

Michael Burns also testified at trial, maintaining his innocence. In his version of events, he awoke around 1:30 a.m. and went to the kitchen for a Pepsi and a cigarette. He testified that he saw his son running back upstairs in the reflection of the kitchen window. He did not think anything of it at the time, but after his arrest "everything just start[ed] coming together," and he realized that his son must have assaulted Sally. Burns did not mention to the police that he

saw his son, but he too testified that angels visited him in jail and told him that Bryan had assaulted Sally. Initially, Burns denied drinking any beer that day, but later he admitted that he had a beer early in the evening and generally had been drinking one to three beers a day since he stopped attending AA.

The trial court credited Sally's testimony and disbelieved Michael and Bryan's accounts of the assault. The court specifically stated that Sally's testimony was sufficient and believable, even though her identification was based on circumstantial evidence. The court appreciated that Sally did not claim to have seen her assailant, but it noted that she offered consistent testimony that she could smell beer and cigarettes on the assaulter's breath and observed that he had facial hair. The court also remarked that she did not "appear to have any axe to grind" and testified calmly about the events. Bryan's testimony, on the other hand, was tentative and inconsistent with his report to police. He appeared to be looking to his father for approval, and his description of the assault did not match the description given by Sally. Furthermore, he responded to several questions about that evening simply by saying "I don't know." The court believed that Bryan was pressured by his father to confess to a crime that he did not commit. The court concluded that Michael Burns, the only person in the house who had consumed beer and cigarettes—as well as the only person with facial hair—was the person who assaulted Sally.

The state courts denied relief on Burns's claims of ineffective assistance of counsel and insufficient evidence. The district court, finding the state courts' decisions reasonable, denied Burns's federal petition for a writ of *habeas corpus*.

## II

Burns's petition is premised on two claims: ineffective assistance of counsel and insufficient evidence. Burns argues that the state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), was unreasonable and that the verdict "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," given Sally's failure to make a positive identification of Burns and Bryan's confession. See 28 U.S.C. § 2254(d)(1), (2).

### *Ineffective Assistance of Counsel*

Burns acknowledges that the Wisconsin courts correctly identified *Strickland* as the appropriate legal test, but he argues that the courts unreasonably applied it to his case. To prevail on this claim, Burns must show that the state court's application of *Strickland* was not merely erroneous, but was objectively unreasonable. See *Malone v. Walls*, 538 F.3d 744, 758 (7th Cir. 2008). An unreasonable application means "something like lying well outside the boundaries of permissible differences of opinion." *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th

Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Burns argues that counsel committed three errors. According to Burns, counsel did not investigate an alleged romantic relationship between Sally and Bryan, did not adequately cross-examine Sally, and did not properly advise Burns about the risks of waiving his right to a jury trial.

Burns first attacked counsel's investigation in his motion for a new trial, which was based, among other things, on the discovery of new evidence: a letter written by Sally to Bryan after the trial that Burns believes shows a romantic relationship between Sally and Bryan. Burns contended that if his counsel had investigated the relationship between Sally and Bryan, then counsel could more effectively have explained why Bryan made sexual contact with Sally, making his in-court confession believable.

The trial court considered Burns's argument, but concluded that Burns had presented no evidence that a romantic relationship actually existed between Sally and Bryan. The court held that Burns's only proffered evidence – the letter – did not even imply a romantic relationship; rather it suggested a long-term friendship. The Wisconsin Court of Appeals adopted this conclusion, and the federal district court concluded that the decision of the state courts was reasonable.

We agree with the district court's assessment. The state courts reasonably concluded that counsel cannot be faulted for failing to investigate this alleged romantic relationship. First, counsel interviewed Bryan, who despite confessing that he assaulted Sally, did not suggest that there was a romantic relationship. Second, Burns himself never suggested to counsel that there was a romantic relationship between Bryan and Sally. See *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Since counsel's performance is evaluated based on the information known at the time of the decision not to investigate, *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002), counsel cannot be faulted if he was never told there was a romantic relationship. Moreover, any supposed failure to investigate could not have prejudiced Burns because even now there is no evidence apart from the inadequate letter that such a relationship actually existed. See *Strickland*, 466 U.S. at 691.

Burns next argues that counsel failed effectively to cross-examine the state's only witness, Sally. At trial, Sally testified about the assault, and Burns's counsel did cross-examine her. Burns suggests, however, that there were several inconsistencies between Sally's testimony at trial and her report to police two days after the assault. Counsel's failure to highlight these discrepancies, in Burns's view, amounts to ineffective assistance.

Failure to cross-examine a crucial government witness can be a ground for finding ineffective assistance. See *Higgins v. Renico*, 470 F.3d 624, 633 (6th Cir. 2006). But deciding which questions to ask a witness is a matter of trial strategy. *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008). Burns faults his trial counsel for failing to exploit Sally's uncertainty at trial about whether she told police where her attacker was positioned during the assault (she did) or whether he had chapped lips. But Sally's testimony overall closely tracked her initial report to police: she consistently maintained that her assailant kissed her on the mouth, had facial hair, and smelled of beer and cigarettes. The state courts reasonably concluded that clarification of these minor points would not have undermined the basic consistency of her testimony, especially because it was strategically sound not to badger a sympathetic victim. See *Bergmann v. McCaughtry*, 65 F.3d 1372, 1379-80 (7th Cir. 1995).

A marginally closer call is counsel's failure to question Sally about why the police report does not mention that her assailant kissed her on the forehead. The trial judge found the forehead kiss significant – he remarked that a forehead kiss is natural for a parent toward a child. The fact that Sally remembered the forehead kiss "vividly," and Bryan omitted it from his account, helped the judge to conclude that it was Michael – not Bryan – who was the assailant. But, while that fact was significant, it was not controlling. The judge ultimately concluded that "[t]he beer breath, cigarette breath, mustache, kiss on the lips, and the kiss on the forehead was the signature of one person in that house and one person alone and that was the defendant." Even had counsel challenged Sally's failure to reveal the forehead kiss to police, it was reasonable for the state courts to conclude that the outcome of the trial would not have been different, considering the other credited testimony of Sally.

Finally, Burns challenges counsel's failure to apprise him fully of the consequences of waiving a jury trial, especially in light of his successful motion *in limine* to exclude evidence that his daughters previously had made similar accusations against Burns. Burns contends that had he known that the judge who knew about the excluded evidence would also decide his case, he would have opted for a jury trial.

But Burns did know that the judge who decided the motion to exclude would decide his case. Burns was present when the judge ruled on the motion *in limine*, and so he knew which judge had heard the evidence regarding his daughter's accusations. When waiving a jury, the same judge asked Burns (among other things) if he understood that "I would listen to all the witnesses, I would evaluate their testimony and all the evidence, I would apply the law to the evidence, and I would decide whether the state has met its burden of proof beyond a reasonable doubt or not." Burns answered that he understood.

Moreover, the decision to opt for a bench trial rather than a jury trial can be a reasonable choice of strategy, *Milone v. Camp*, 22 F.3d 693, 705 (7th Cir. 1994), especially in a case like this where a judge may be better able to evaluate the facts objectively than a jury unaccustomed

to hearing about the sexual assault of a child. *Strickland* requires great judicial deference to strategic decisions such as whether to waive trial by jury. *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989). Even if the decision was ill-advised, it was not so unreasonable that Burns was denied the benefit of competent counsel. In any case, Burns cannot show that the judge's knowledge of the previous accusations against him prejudiced the outcome. The trial court specifically stated that it "did not base its decision on the possibility that the defendant had previously assaulted his daughters; *it did not need to*." Consequently, neither part of the *Strickland* test was satisfied.

*Sufficiency of the Evidence*

Burns also argues that the trial judge made an unreasonable determination of the facts. He emphasizes the lack of a positive identification from the victim and Bryan's confession. The trial court rejected this argument, finding that Sally's identification was sufficient and that Bryan's testimony was unbelievable. When announcing the judgment, the trial judge acknowledged that Sally's identification was based on circumstantial evidence and that ultimately the case would be decided on whether the court believed Sally or Bryan and Burns. The court credited Sally's testimony because it was consistent with earlier statements. The court made that decision despite the lack of visual identification, but it was impressed that Sally was composed and not vindictive while testifying. The court discounted Bryan's account because it lacked detail, was tentative, and because Bryan repeatedly looked to his father for approval. Additionally, the court found that Bryan did not smoke, drink beer, or have a mustache, while the assailant did. Someone petitioning for *habeas corpus* relief is entitled to prevail "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Trejo v. Hulick*, 380 F.3d 1031, 1031-32 (7th Cir. 2004).

When evaluating a *habeas corpus* petition, this court generally is required to accept credibility determinations by the initial factfinder, who is in the best position to make those determinations. *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003). This case, as the trial judge correctly concluded, was ultimately a credibility contest between two witnesses. There is no dispute that a sexual assault occurred at the time and place the victim described. The only question for the factfinder was whether the victim's testimony that Burns committed the assault should be credited or whether Bryan's confession should be accepted. Given the strong deference accorded the factfinder, and the consistent testimony of Sally, it is impossible to conclude that the trial court's acceptance of Sally's story was unreasonable.

### III

We conclude that Burns has not met his stringent burden of showing either that the state courts applied *Strickland* unreasonably or that their factual determinations were without support. We therefore **AFFIRM** the judgment of the district court denying Burns's petition under 28 U.S.C. § 2254.