## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2017, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Daniel Mola
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Daniel Mola,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 9, 2017

Court of Appeals Case No.
45A03-1608-PC-1911

Appeal from the Lake County
Superior Court

The Honorable Clarence D.
Murray, Judge

The Honorable Kathleen Sullivan,
Magistrate

Trial Court Cause No.
45G02-1209-PC-11

**May, Judge.**

[1]     Daniel Mola appeals the post-conviction court's denial of his petition for post-conviction relief.  He presents multiple issues for our consideration, which we consolidate and restate as:

> 1.  Whether the post-conviction court abused its discretion when it denied Mola's request to hire a toxicologist at public expense to testify at Mola's post-conviction hearing;
>
> 2.  Whether the post-conviction court abused its discretion when it denied Mola's request to admit a Medication Guide for Prozac;
>
> 3.  Whether Mola received ineffective assistance of trial counsel;
>
> 4.  Whether Mola received ineffective assistance of appellate counsel; and
>
> 5.  Whether the Indiana Court of Appeals erred in its decision in Mola's direct appeal.

We affirm.

# Facts and Procedural History

[2]     The facts of Mola's underlying conviction were set forth in our opinion on direct appeal:

> On July 18, 2009, Christopher Elkins ("Elkins") and Mola were at a bar called Buddy and Pal's Place in Winfield, Indiana. Elkins was sitting at the bar area.  When Elkins left his seat, Mola took his place.  Later, Elkins returned and entered into a "heated" conversation with Mola.  Both men appeared angry and

yelled expletives at each other. Bar employees then separated the two, and Elkins left the bar area.

Elkins accepted an offer from his friend, James Bannister ("Bannister"), to drive him home. As Bannister and Elkins were preparing to leave the bar, they walked past Mola who was still sitting in the bar area. Elkins shoved Mola's barstool before walking out to the parking lot. After Elkins passed, Mola stood up, loaded a round into his handgun and approached the exit while holding the pistol. A bar employee tried to stop Mola, but Mola continued out to the parking lot.

When Mola reached the parking lot, Elkins and Bannister were near the back of Bannister's vehicle. Mola raised his firearm and yelled to Elkins, "[H]ey [,] [m*f*]." Elkins turned around and asked Mola, "[W]hat are you going to do[?][S]hoot me[?]" Mola then fired two shots in "rapid" succession at Elkins, striking him in the abdomen. Elkins died as a result of his gunshot wounds.

On July 20, 2009, the State of Indiana charged Mola with murder and carrying a handgun without a license.

*Mola v. State*, 45A03-1105-CR-206, 964 N.E.2d 316 at *1 (Ind. Ct. App. February 29, 2012) (formatting of quotes in original) (record citations omitted), *trans. denied*. In April 2010, Mola's first trial ended in a mistrial. The trial court held a second jury trial in March 2011. The jury in the second trial found Mola guilty of Class A felony voluntary manslaughter and Class A misdemeanor carrying a handgun without a license, and the trial court sentenced him to thirty years incarcerated.

[3]     Mola appealed, arguing the trial court abused its discretion when it denied his proposed jury instruction on the lesser-included offense of involuntary manslaughter.  Our court affirmed, holding:

> No serious evidentiary dispute was present regarding Mola's intent to kill Elkins.  The trial court had sufficient evidence to conclude that Mola acted with the intent to kill and not merely batter Elkins.  Consequently, it was not an abuse of the trial court's discretion to deny Mola's proposed jury instruction that included involuntary manslaughter as a lesser included offense.

*Id*. at *3.

[4]     On September 18, 2012, Mola filed a petition for post-conviction relief.  Mola amended his petition on May 5, 2014.  On June 17, 2014, Mola filed a petition requesting the post-conviction court hire a toxicologist at public expense, which the post-conviction court denied.  The post-conviction court held evidentiary hearings on Mola's petition for post-conviction relief on July 9 and 10, 2014.  During the hearing, Mola attempted to offer into evidence a "Medication Guide for Prozac which enumerated the many adverse effects of the drug." (Amended Br. of Appellant at 17) (citations to the record omitted).  The State objected, and the trial court sustained the State's objection but stated, "we'll show that it's admitted as an offer to prove." (Tr. at 110.)  The post-conviction

court issued an order[1] on July 27, 2016, denying Mola's petition for post-conviction relief.

# Discussion and Decision

We first note Mola proceeds *pro se*. A litigant who proceeds *pro se* is held to the same rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*, 558 U.S. 1074 (2009). One risk a litigant takes when he proceeds *pro se* is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id.* When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002), *reh'g denied*, *cert. denied* 537 U.S. 1122 (2003). A petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). He must convince the court on review that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-

---

[1] The post-conviction court's order is very detailed and has aided our review of this complicated matter immensely.

conviction court. *Id*. at 170. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id*. We accept the post-conviction court's findings of fact unless clearly erroneous. *Id*. We do not reweigh the evidence or judge the credibility of witnesses. *Mahone v. State*, 742 N.E.2d 982, 984 (Ind. Ct. App. 2001), *trans. denied*.

## 1. Denial of Request to Hire Toxicologist

[7] The decision whether to appoint at public expense an expert for indigent defendants is left to the trial court's sound discretion, and we will reverse only for an abuse of that discretion. *Beauchamp v. State*, 788 N.E.2d 881, 888 (Ind. Ct. App. 2003). It is within that discretion "to determine whether the requested service would be needless, wasteful or extravagant." *Id*.

> While there is no exhaustive and precise list of considerations, the trial court's central inquiry addresses whether the services are necessary to assure an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services. Factors include: (1) whether the services would bear on an issue generally regarded to be within the common experience of the average person, or on one for which an expert opinion would be necessary; (2) whether the requested expert services could nonetheless be performed by counsel; (3) whether the proposed expert could demonstrate that which the defendant desires from the expert; (4) whether the purpose for the expert appears to be only exploratory; (5) whether the expert services will go toward answering a substantial question in the case or simply an ancillary one; (6) the seriousness of the charge; (7) whether the State is relying upon an

expert and expending substantial resources on the case; (8) whether a defendant with monetary resources would choose to hire such an expert; (9) the costs of the expert services; (10) the timeliness of the request for the expert and whether it was made in good faith; and (11) whether there is cumulative evidence of the defendant's guilt. Even where there are factors present militating toward appointment of an expert, such as the services would have borne upon an issue outside the common experience of the average person, and analysis is outside the scope of the typical attorney's services, the factors may be insufficient to require the trial court to approve the hiring of an expert at public expense.

*Kocielko v. State*, 938 N.E.2d 243, 254-5 (Ind. Ct. App. 2010) (internal citations omitted), *on reh'g*, 943 N.E.2d 1282 (Ind. Ct. App. 2011),[2] *trans. denied*.

[8]     On June 20, 2014, Mola filed a "Verified Motion for Order Authorizing Expert at Public Expense." (App. Vol. IV at 38.) In that motion, he asked the post-conviction court to authorize him to retain the services of a toxicologist at public expense for the purpose of bolstering his claim his trial counsel was ineffective for failing to present additional evidence of Elkins' intoxication. Mola claims this evidence would prove he acted in self-defense when he killed Elkins. The post-conviction court concluded: "Having a toxicologist testify at trial would be cumulative[.]" (App. Vol. V at 87.) We agree.

[9]     The evidence Mola sought to present via the toxicologist at the post-conviction hearing was cumulative of evidence presented during his March 2011 trial,

---

[2] The issues clarified on rehearing in *Kocielko* are not relevant to the case before us.

including eyewitness testimony of Elkins' intoxication. In examining the other factors set forth in *Kocielko*, we note Mola requested the appointment of the toxicologist at public expense less than a month before the evidentiary hearings held on July 9 and 10, 2014. Mola certainly faced a serious charge during his original trial, which he sought to overturn in the post-conviction proceedings. In addition, he indicated the cost of retaining the toxicologist as required in the *Kocielko* factors, though the reasonableness of this charge is unclear from Mola's motion. However, based on the *Kocielko* factors, we conclude the post-conviction court did not abuse its discretion when it denied Mola's motion. *See*, *e.g.*, *Watson v. State*, 972 N.E.2d 378, 385-6 (Ind. Ct. App. 2012) (no abuse of discretion when trial court denied motion for expert).

## 2. Denial of Request to Admit Medication Guide

[10] The admission of evidence in a post-conviction proceeding is within the post-conviction court's discretion, and we will reverse only for an abuse of that discretion. *Conner v. State*, 711 N.E.2d 1238, 1258 (Ind. 1999), *reh'g denied*, *cert. denied* 531 U.S. 829 (2000). During his post-conviction evidentiary hearing, Mola sought to admit a Medication Guide for Prozac, which Mola claimed was a printout of information provided by Eli Lilly, the manufacturer of Prozac. Mola argued the document provided information regarding the side effects of Prozac and was relevant to whether his trial counsel was ineffective for "failing to get a toxicologist who could testify to such matters." (Tr. at 109.)

[11]     The State objected on hearsay grounds.  Mola and the post-conviction court then discussed the document:

> [Court]:  Do you have a response to the hearsay objection?
>
> [Mola]:  Your Honor, I believe it would constitute a commercial publication exception to the hearsay.
>
> [Court]:  It's not a commercial publication in that it's not disseminated.  It's only disseminated to doctors and people taking the medication, is that right?
>
> [Mola]:  Yes, I believe so.  I mean, it's approved by the FDA.
>
> [Court]:  I understand that.  That's irrelevant.  That has nothing to do with whether it's based on this.  This is a printout out [sic] by the company.  It has nothing to do with the FDA's approval of the medication for the purposes it's designed for.
>
> [Mola]:  What about as a business record?
>
> [Court]:  That's a good response to it.

(*Id*. at 108.)  The State then objected on foundational grounds and the inability to cross-examine the document.  The post-conviction court sustained the State's objections, though it accepted the document as "an offer to prove." (*Id*. at 110.)

[12]     On appeal, Mola reiterates his assertion regarding the relevancy of the document; however, he does not provide cogent argument regarding why it should be admitted.  Therefore, he has waived his argument.  *See Smith v. State*,

822 N.E.2d 193, 202-3 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*; *see also* Ind. App. Rule 46(A)(8)(a) (requiring argument section of appellant's brief to "contain the contentions of the appellant on the issues presented, supported by cogent reasoning[ ]" and "[e]ach contention must be supported by citations to the authorities, statutes, and the appendix or parts of the Record on Appeal relied on, in accordance with Rule 22").

## 3. Ineffective Assistance of Trial Counsel

A successful claim of ineffective assistance of trial counsel must satisfy two components. First, the defendant must show deficient performance - representation that fell below an objective standard of reasonableness involving errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied*. Second, the defendant must show prejudice - a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*.

In reviewing a claim of ineffective assistance of counsel, we begin with a strong presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012), *reh'g denied*. Trial counsel has wide latitude in selecting trial strategy and tactics, which choices will be subjected to

deferential review. *Id.* A petitioner must offer "strong and convincing evidence to overcome this presumption" of adequate assistance and reasonable professional judgment. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied*, *cert. denied* 534 U.S. 830 (2001).

### *A. Partial Verdict*

[15] Mola argues his trial counsel in his first trial, Nick Thiros and Paul Stracci, were ineffective because they did not "consult with Mola on whether to pursue a partial-verdict at the conclusion of the mistrial[.]" (Amended Br. of Appellant at 21.) In its order, the post-conviction court described the testimony which fuels Mola's argument on appeal:

> At the first trial, the jury was deadlocked and Mr[.] Thiros thought a mistrial was in Mola's best interests and he made the strategic decision to ask for a mistrial. Mr[.] Stracci believes he discussed the jury being undecided with Mr[.] Mola. . . . It was not until after the mistrial was declared that Samuel Vazanellis, an associate attorney for Thiros & Stracci spoke to the released jury with attorneys for the State of Indiana. Mr[.] Vazanellis prepared an Affidavit of that jury encounter describing that the jurors would have voted to acquit Mola of murder and they were hung on involuntary manslaughter, and one or two thought Mola acted in self defense.

(App. Vol. V at 84.) Vazanellis' affidavit also indicated the jurors thought Mola was also not guilty of voluntary manslaughter.

[16] However, the conversation Mola uses to support his argument occurred after the trial court granted his request for mistrial. Thus, Thiros and Stracci would

not have known the jury had come to a conclusion regarding some of the charges at the time it would have been appropriate to request a partial verdict. We note

> [b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps put together the trial puzzle. . . . Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents. . . . A host of reasons—sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.

*Yeager v. United States*, 557 U.S. 110, 119-20 (2009).

[17] Additionally, as the post-conviction court noted, "[T]here was no indication that the jury was deadlocked on only one, or all of the possible verdicts for the case. It would have been a great gamble to request a partial verdict and Mr[.] Thiros made a sound strategic decision to ask for a mistrial." (App. Vol. V at 86.) As we defer to trial counsel's strategic decisions, *Ward*, 969 N.E.2d at 51,

we conclude Mola has not demonstrated his trial counsel's performance was deficient for failing to request a partial verdict.[3]

### *B. Testimony Regarding Elkins' Level of Intoxication*

[18] Mola argues his trial counsel was ineffective because they did not "elicit testimony that the victim's body smelled of alcohol and for failing to obtain a toxicologist in order to introduce evidence of the victim's blood-alcohol level and the adverse effects of Prozac." (Amended Br. of Appellant at 32.) During the post-conviction hearing, Mola's counsel Stracci explained why he and Thiros chose not to call a toxicologist as a witness, which the post-conviction court summarized in its order:

> The defense did elicit from Patricia Elkins that her husband had been taking Prozac for ten years and that he also took Synthroid, but she said that he was not aggressive when he drank. On cross-examination of James Bannister, Elkins' friend, Mr[.] Stracci got him to admit he thought Elkins was intoxicated that night. In response to a jury question, Bannister said that Elkins functioned fine other than fumbling over the right word to use in a sentence. The jury heard ample evidence that Elkins was intoxicated the night of the shooting, and that Elkins shoved Mola's barstool when he exited the bar. Having a toxicologist testify at trial would be cumulative and perhaps speculative, since not all people metabolize alcohol or drugs at the same rate. Having a toxicologist testify at trial may have backfired and left the jury wondering what effect alcohol had on Mola that evening. This

---

[3] Mola also argues his trial counsel was ineffective for failing to ask for the verdict forms. As the jury did not reach a verdict, it would follow no verdict forms were completed. Mola has offered no evidence the forms existed and, thus, is unable to predicate error on his trial counsel's failure to review them.

was a strategic decision, and the Court cannot say that Stracci's strategic decision to forego a toxicology expert was faulty.

(App. Vol. V at 87) (internal citations to the record omitted).

[19] In his brief, Mola relies on *Harris v. Cotton*, 365 F.3d 552 (7th Cir. 2004). *Harris* is distinguishable. In *Harris*, the Seventh Circuit Court of Appeals held Harris' trial counsel was ineffective for not calling as a witness a toxicologist who could testify regarding the victim's level of intoxication the night he was killed and how that related to Harris' perception of the threat the victim posed, as Harris argued he acted in self-defense when he shot the victim. However, the court noted

> there is little or no evidence which goes to show that Harris knew that Jones was under the influence of cocaine and alcohol. . . . When defense counsel tried to question the coroner as to whether Jones's body smelled of alcohol, his line of questioning was disallowed. Therefore, the jury was left with the impression that the decedent was not intoxicated when, in fact, he was quite inebriated. If the jury believed that Jones was sober, there is a reasonable probability that they would not have believed Harris's version of events as it related to Jones's behavior.

*Id*. at 557 (footnote omitted). Here, the jury heard from two witnesses regarding Elkins' intoxication that night and his normal behavior when intoxicated, and thus the danger that befell Harris, that his jury did not understand the threat the victim allegedly posed, is not present in this case.

Additionally, as we stated *supra*, any evidence from a toxicologist would have likely been cumulative because the jury was aware Elkins was intoxicated. Regarding the smell of Elkins' body during the autopsy, that evidence was likely also cumulative, because Mola asserts its admission was another way to demonstrate Elkins was intoxicated. Mola has not demonstrated he was prejudiced by his trial counsel's decision to refrain from calling a toxicologist during trial or include testimony about the smell of the body; thus, we conclude he has not demonstrated his trial counsel was ineffective. *See McCary*, 761 N.E.2d at 392 (petitioner does not demonstrate ineffective assistance of counsel if he is not prejudiced by the alleged error).

### C. Final Jury Instruction 20

On appeal, Mola argues trial counsel was ineffective "for failing to object specifically and fully to the impropriety of Final Instruction No. 20, which could have led the jury to believe that the defendant's evidence - and the defendant's evidence alone - was required to affirmatively prove specified facts demonstrating that he was acting in self-defense." (Br. of Appellant at 44.) Final Jury Instruction 20 stated:

> For the defendant's assertion of self-defense to prevail in this case, he must have shown,
>
> 1. that he was in a place where he had the right to be;
>
> 2. [that] he did not provoke, instigate, or participate willingly in the violence;

3. [that he] had a reasonable fear of death or great bodily harm.

For the defense of self-defense to fail in this case, the State must have disproved one of these elements beyond a reasonable doubt.

(Record of Mola's Trial Proceedings at 1558.) Mola's trial counsel offered an alternate instruction, but the trial court denied the request to amend the jury instruction. Mola contends, "[w]hile counsel proposed its own self-defense instructions, none of them remedied the alleged defect in [Final Jury Instruction] 20 and counsel never raised a specific and full objection." (Amended Br. of Appellant at 45) (record citation omitted).

[22] To show ineffective assistance based on counsel's failure to object, a petitioner must demonstrate the trial court would have sustained the objection. *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003). The petitioner must also establish prejudice. *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind. 1997), *reh'g denied*, *cert. denied* 525 U.S. 1073 (1999). Mola relies on our holding in *Burnside v. State*, 858 N.E.2d 232 (Ind. Ct. App. 2006), in which we held Burnside's appellate counsel was ineffective for failing to raise the issue of a jury instruction on appeal. The instruction at issue in that case is very different from the one before us. The *Burnside* court noted:

According to Burnside, the instruction resulted in fundamental error because: (1) the instruction erroneously merged the separate concepts of self defense and reckless homicide into a single concept of reckless self defense; and (2) the instruction, particularly paragraph D, only allowed the jury to find Burnside guilty of reckless homicide if it first found that he was acting in

self defense. The State correctly concedes that the instruction erroneously intermingled the concepts of self defense and reckless homicide and that paragraph D was erroneous. Under Paragraph D of the instruction, to find Burnside guilty of reckless homicide, the jury would have been required to find "the existence of the four essential elements of the charge of murder," that Burnside was acting in self defense, and that Burnside was "acting in plain, conscious, and unjustifiable disregard of harm that might result and that the disregard involved a substantial deviation from acceptable standards of conduct." However, as noted above, for the jury to find Burnside guilty of reckless homicide, it only needed to find that Burnside killed Williams by engaging in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involved a substantial deviation from acceptable standards of conduct. Burnside argues, and we agree, that "by requiring a finding of self-defense as a precondition to a reckless homicide verdict, the instruction deprived Burnside of his right to have the jury consider his guilt on reckless homicide as a lesser-included offense." We conclude that Burnside's appellate counsel was deficient by failing to raise this issue because it was significant and obvious from the face of the record and was clearly stronger than the issues raised in Burnside's direct appeal.

*Id*. at 240-1 (internal citations and footnote omitted). Here, Final Jury Instruction 20 focused exclusively on the elements of self-defense.

[23] Final Jury Instruction 20 can be better analyzed using *Brown v. State*, 498 N.E.2d 1192 (Ind. 1986). In *Brown*, the trial court instructed the jury:

> If there is any evidence whether through testimony or physical fact that a defendant acted in defense of himself, then the State of Indiana must negate the defense beyond a reasonable doubt.

In summary, a claim of self-defense contains the following elements:

The defendant must show that by not being the initial aggressor he acted without fault, or if with fault by being the initial aggressor or entering into combat with another person that he retreated to the legal limit; that the defendant honestly feared or actually was in real danger of death or great bodily harm; the force used as (sic) reasonably necessary to prevent serious bodily injury to himself.

If the State disproves any of the above elements, it has sustained its burden and there is no self-defense claim, and if the State of Indiana does not prove beyond any reasonable doubt that this defendant did not act in self-defense, then you must acquit said defendant.

*Id.* at 1194. Brown argued the words "defendant must show" impermissibly shifted the burden of proof. *Id.* Our Indiana Supreme Court held the language "cannot be construed to shift the burden of proof on the issue of self-defense, as it constitutes essentially a restatement of the case law addressing what a defendant must show to raise a valid claim of self-defense." *Id.*

[24] Thus, based on our Indiana Supreme Court's holding in *Brown*, the trial court would not have sustained any objection based on the language indicating Mola "must have shown" the element of self-defense. (Record of Mola's Trial Proceedings at 1558.) As Mola has not demonstrated the trial court would have sustained the objection he asserts trial counsel was ineffective for failing to make, we conclude he has not demonstrated his trial counsel was ineffective for failing to make that objection. *See Glotzbach*, 783 N.E.2d at 1224 (to

demonstrate trial counsel was ineffective for failing to make an objection, the petitioner must prove the objection would have been sustained).

## 4. Ineffective Assistance of Appellate Counsel

[25] Claims of ineffective assistance of appellate counsel are reviewed using the same standard as claims of ineffective assistance of trial counsel. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). These claims generally fall into three categories: (1) denying access to appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997*), reh'g denied, cert. denied,* 525 U.S. 1021 (1998). Relief is appropriate only when we are confident we would have ruled differently. *Id*. at 196. Because counsel is afforded considerable discretion in choosing strategy and tactics, we presume counsel's assistance was adequate and all significant decisions were made in the exercise of reasonable professional judgment. *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. Deciding which issues to raise on appeal is one of the most important strategic decisions of appellate counsel. *Bieghler*, 690 N.E.2d at 193.

[26] On appeal, Mola takes issue with the manner in which his appellate counsel, Marce Gonzalez, Jr., presented the argument on appeal. In Mola's direct appeal, Gonzalez argued the trial court erred when it did not include an instruction for the lesser-included offense of involuntary manslaughter "because there was a serious evidentiary dispute (SED) as to whether Mola intended to kill or merely batter Elkins." (Amended Br. of Appellant at 47.) Mola

contends Gonzalez should have instead argued about the trajectory of the wounds Mola inflicted on Elkins to prove he lacked the requisite intent to kill Elkins.

[27] During his post-conviction hearing, Mola questioned Gonzalez at length, lobbing random cases with questionable relevancy at Gonzalez in an effort to show Gonzalez made a weak argument on appeal. Gonzalez testified he either knew about the case and often corrected Mola's understanding of the holding, or indicated he knew the general concept contained in Mola's case citations. Gonzalez has been "an appellate public defender since 1985, so twenty-nine years." (Tr. at 62.) He indicated he did not argue about the trajectory of the wounds or Mola's other proffered arguments for a variety of reasons including the lack of development of the argument at trial, the lack of evidence, and general appellate strategy.

[28] The post-conviction court found, "appellate counsel made strong strategic decisions; Mola has not shown otherwise." (App. Vol. V at 88.) We agree. Gonzalez explained at length his reasons for presenting the argument on appeal the way he did, including the fact certain issues Mola favored were not developed in the trial record or the fact that Mola's understanding of what he considered to be important cases was flawed. Mola has not demonstrated his appellate counsel was ineffective. *See Timberlake v. State*, 753 N.E.2d 591, 606 (Ind. 2001) ("'a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained

by any reasonable strategy'") (citation omitted), *reh'g denied, cert. denied* 537 U.S. 839 (2002).

## 5. Court of Appeals Decision on Direct Appeal

When considering whether to revisit an earlier holding of this court, we apply the law of the case doctrine. *State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994), *reh'g denied*. In *Huffman*, our Indiana Supreme Court explained:

> The law of the case doctrine mandates that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. The doctrine's admittedly important purpose is to minimize unnecessary relitigation of the legal issues once they have been resolved by an appellate court.

> With due respect for the doctrine of *res judicata* this Court has always maintained the option of reconsidering earlier cases in order to correct error. A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice.

*Id*. (internal citations and quotation marks omitted).

On direct appeal, Mola argued "the trial court abused its discretion when it denied Mola's proposed jury instruction on the lesser-included offense of involuntary manslaughter." *Mola*, 964 N.E.2d 316 at *1. Mola argued "there was a serious evidentiary dispute as to whether Mola intended to kill or merely batter Elkins." *Id*. at *2. We held the trial court did not abuse its discretion

when it denied Mola's proposed jury instruction on involuntary manslaughter because there was no serious evidentiary dispute regarding Mola's intent based on case law stating "[k]nowing or intentional killing may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury." *Id*. at *3. The evidence during Mola's trial showed that,

> after Elkins pushed Mola's barstool on his way to the parking lot, Mola deliberately loaded a round in his handgun in order to prepare it for shooting and ran after Elkins while brandishing the weapon. On his way outside, Mola resisted a bar employee's efforts to discourage him from pursuing Elkins. Once Mola saw Elkins standing by Bannister's vehicle in the parking lot, Mola pointed the handgun at Elkins and confronted Elkins by yelling, "[H]ey[,] [m*f*]." After Elkins asked Mola whether he was going to shoot him, Mola fired his gun twice at Elkins who was unarmed. The two shots were fired in "rapid" succession, and five witnesses testified that Elkins never advanced toward Mola before he fired the second shot.

> Both bullets struck Elkins in his abdomen, an area of the body that Mola testified he knew contained many vital organs, and Elkins died from the gunshot wounds. After the police arrived, Mola asked for the return of his own gun so that he could shoot himself because he did not want to go to jail. Mola told officers that he knew the shooting was not justified. While Mola testified that he never intended to kill Elkins, "[a] verbal denial of the requisite criminal intent does not *ipso facto* create a 'serious evidentiary dispute.'"

*Id*. (internal citations omitted).

[31]    Mola argues his case meets the extraordinary circumstances as stated in Huffman, as our court's decision on his direct appeal was "clearly erroneous

and constitutes manifest injustice," (Amended Br. of Appellant at 53), because "the record reflected sufficient evidence from which a jury could reasonably infer that Mola did not intentionally or knowingly kill Elkins. Clearly, believing all or even some of the aforementioned evidence would have militated against a conclusion of an intentional or knowing killing." (*Id*. at 52.)

[32] The post-conviction court concluded, "Mola's final claim that the appellate court decided his appeal incorrectly and manifest injustice requires he should have a new trial is frivolous." (App. Vol. V at 89.) We agree. Mola's claim on appeal of the denial of his petition for post-conviction relief asks our court to reweigh evidence and judge the credibility of witnesses, which we cannot do in any relevant context. *See Mahone*, 742 N.E.2d at 984 (appellate court does not reweigh evidence on appeal from the denial of a post-conviction proceeding); *see also Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (appellate court will not reweigh evidence in criminal appeal). There exist here no extraordinary circumstances from which manifest injustice would result.

# Conclusion

[33] The post-conviction court did not abuse its discretion when it denied Mola's request to hire a toxicologist at public expense because any testimony elicited from the toxicologist would be cumulative. Mola has waived his argument regarding the post-conviction court's denial of his request to admit a medication guide for Prozac because he did not properly support his argument as required in the Indiana Rules of Appellate Procedure. Additionally, Mola has not

demonstrated he received ineffective assistance of trial or appellate counsel. Finally, he is not entitled to review of our decision in his direct appeal. Accordingly, we affirm the decision of the post-conviction court.

[34] Affirmed.

Barnes, J., and Bradford, J., concur.